UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JASON BRUENING                                    CIVIL ACTION

VERSUS                                            No. 25-2569

ONEMAIN FINANCIAL
GROUP, LLC, ET AL.                                SECTION I

ORDER

Before the Court is defendant OneMain Financial Group, LLC's ("OneMain") motion[1] to compel arbitration and stay the above-captioned case. Plaintiff Jason Bruening ("plaintiff") filed a response[2] in opposition. OneMain filed a reply.[3]

For the reasons set forth below, the Court grants the motion to compel and stays the above-captioned matter pending resolution in arbitration.

I.    BACKGROUND

This dispute stems from a loan agreement entered into by plaintiff and his now ex-wife, Nicole Bruening ("Nicole"),[4] with OneMain before they were divorced (the "loan agreement").[5] According to plaintiff, Nicole assumed sole responsibility for repaying the loan pursuant to the couple's divorce decree.[6] Allegedly, after the divorce and without plaintiff's "knowledge, authorization or consent," Nicole "borrowed additional funds from OneMain, and modified and extended the terms of the loan."[7]

---

[1] R. Doc. No. 27.

[2] R. Doc. No. 30.

[3] R. Doc. No. 31.

[4] Nicole is not a party to the above-captioned action.

[5] *See* R. Doc. No. 1 ¶ 10–11.

[6] *Id.* ¶ 11.

[7] *Id.*

1

The affidavit of Zach Burton, a director at OneMain, states that the subsequent agreement entered into by Nicole modified the monthly loan payments owed under the loan, but "did not modify any other terms of the" loan agreement.[8] Eventually, Nicole stopped making payments and the loan defaulted.[9]

OneMain reported the delinquency and default on plaintiff's credit report.[10] After discovering the adverse reporting, plaintiff contacted OneMain as well as defendants TransUnion LLC ("TransUnion"), Equifax Information Services LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively, "defendants"), who are not joined in this motion.[11] He explained that the "additional monies loaned, and the changes [] to the terms and conditions of the loan were not authorized, consented to, were without his knowledge and were fraudulent."[12] He also requested that defendants accordingly correct the adverse credit reporting.[13] Defendants "refused" to make the requested changes and defendants TransUnion, Equifax, and Experion continued to "publish a credit report containing inaccurate information."[14]

---

[8] R. Doc. No. 27-2, at 2.

[9] R. Doc. No. 1 ¶ 11 ; *see also* R. Doc. No. 27-2, at 2 ("Nicole made minimal payments on the account until October 2023. Thereafter, the Bruenings failed to make required payments on the account, and the account became in default under the Contract.").

[10] R. Doc. No. 1 ¶ 12.

[11] *Id.*

[12] *Id.*

[13] *Id.*¶¶ 13–14.

[14] *Id.* ¶¶ 14, 17.

Plaintiff alleges that he has been denied credit and loans for his business as a result of this adverse reporting.[15] He also submits that he has suffered "lost business opportunities due to the denial of credit, aggravation inconvenience, embarrassment and frustration, as well as actual monetary damages."[16] Plaintiff brings claims against defendants pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*[17]

The loan agreement executed by plaintiff and Nicole contains an agreement to arbitrate and waiver of jury trial section (the "arbitration agreement").[18] The first subsection of this section is titled "DESCRIPTION OF ARBITRATION," and includes: "UNDER THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL . . . TO THE FULLEST EXTENT PERMITTED BY LAW."[19] In the subsection titled "CLAIMS AND DISPUTES COVERED" the agreement reads:

> Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve all claims and disputes between us ("Covered Claims") by BINDING ARBITRATION. This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

---

[15] *See, e.g., id.* ¶¶ 13–14, 16.

[16] *Id.* ¶ 23; *see also id.* ¶¶ 27, 31, 35.

[17] *Id.* ¶¶ 1, 8–9, 22–37.

[18] *See* R. Doc. No. 27-2, at 12–13.

[19] *Id.* at 12.

This Agreement with Lender; any previous retail credit agreement ("Retail Contract") assigned to Lender and any previous loan from or assigned to Lender . . . whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement (except as expressly set forth in Subsection G below)[20] and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of this Arbitration Agreement and the Agreement; any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Arbitration Agreement; . . . any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; . . . any claim or dispute based on any alleged tort (wrong), including intentional torts; any claim for damages or attorneys' fees, and any claim for injunctive, declaratory, or equitable relief.

The "MATTERS NOT COVERED BY ARBITRATION" subsection states that OneMain "does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin, or foreclosure, but instead may proceed in court for those judicial remedies."[21] This subsection also excepts from the arbitration agreement any lawsuits brought by any party which seek

---

[20] Subsection G reads: "LIMITATION OF PROCEEDINGS. Lender and I further agree that the arbitrator will be restricted to resolving only the claims, disputes or controversies between Lender and me and the other parties covered by this particular Agreement (and not by similar agreements). Arbitration is not available and shall not be conducted on a class-wide basis or consolidated with other claims or demands of other persons. I agree not to participate in a representative capacity or as a member of any class of claimants pertaining to any Covered Claim. To the extent that this class action waiver provision is found to be unenforceable, then the entirety of this Arbitration Agreement shall be null and void. *The determination of the validity of the enforceability of this class action waiver is to be made by the court and not the arbitrator.*" *Id.* (emphasis added). Neither party asks this Court to rule on the validity or enforceability of the class action waiver in Subsection G, and because plaintiff is not bringing a class action, *see* R. Doc. No. 1, the Court finds no occasion to make such a ruling.

[21] R. Doc. No. 27-2, at 12.

4

"to recover the monetary jurisdictional limit of a small claims or equivalent [state] court."[22]

OneMain seeks to compel arbitration based on this arbitration agreement within the loan agreement.[23] It submits that the parties have "unquestionably" entered into an agreement to arbitrate, because plaintiff both signed the loan agreement containing the arbitration agreement and conceded in his complaint that he, along with Nicole, entered into the loan agreement with OneMain.[24] OneMain also asserts that it is clear that plaintiff's claims fall within the scope of the arbitration agreement, as the arbitration agreement "covers 'all claims disputes arising out of, in connection with, or related to this agreement with Lender,'" as well as "'any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance or rule' and 'any claim based on state or federal property laws'" which OneMain contends includes plaintiff's FCRA claims.[25]

Further, OneMain submits that the arbitration agreement contains a delegation provision, which delegates the threshold questions of arbitrability and the validity and enforceability of the arbitration agreement to the arbitrator.[26] According to OneMain, this Court is therefore required, barring any challenges to the delegation provision itself, to compel plaintiff's claims to arbitration, notwithstanding any

---

[22] *Id.*
[23] *See generally* R. Doc. No. 27-1.
[24] *Id.* at 8.
[25] *Id.* at 11 (quoting R. Doc. No. 27-1, at 12).
[26] *Id.* at 12.

arbitrability or enforceability challenges raised by plaintiff.[27] OneMain further asks this Court to stay this matter pending arbitration.[28]

Plaintiff concedes that he and Nicole signed the loan agreement containing the arbitration agreement.[29] Yet, he maintains that because Nicole modified the loan agreement without his knowledge or consent, and because "his damages and injuries all result from the amended loan agreement with OneMain which was not signed by" him, that he cannot be held to have agreed to arbitrate the claims in this matter.[30] Additionally, plaintiff submits that Nicole "refinanced, renewed, or got additional funds from OneMain."[31]

Plaintiff also seems to concede that if the loan amendment between OneMain and Nicole contained an "identical" arbitration provision to the one contained in the loan agreement, that his claims fall within the scope of arbitrable claims pursuant to those provisions.[32] However, he fervently reiterates that there is "clearly NOT" an agreement between him and OneMain with respect to any claims arising out of the loan amendment entered into by Nicole,[33] and he therefore "cannot be compelled to arbitrate claims pursuant to an arbitration agreement that he did not sign."[34]

---

[27] *Id.*
[28] *Id.* at 13–14.
[29] R. Doc. No. 30, at 1.
[30] *Id.* at 2.
[31] *Id.*
[32] *Id.* at 3. Plaintiff also represents that OneMain has not responded to his requests for the amended loan agreement. *See id.* at 2 ("Plaintiff has requested a copy of this revised agreement from OneMain, but to date, has still not been provided the same.").
[33] *Id.* at 3.
[34] *Id.*

OneMain insists in its reply that the "only modification that has been made to the [loan agreement] is the repayment schedule which reduced the monthly payments from $203.43 to $101.88"[35] and, therefore, the amendment did not negate the parties' arbitration agreement.[36] OneMain further contends that such a modification is proper even absent plaintiff's knowledge or consent because the loan agreement's amendment protocol permits one borrower to "change the repayment terms . . . without notice to any other [b]orrower and without releasing any other borrower from his responsibilities."[37]

Recognizing that the parties disagreed with respect to how the loan agreement was amended, and in acknowledgement of the possibility that the amended agreement could have altered the parties' original agreement to arbitrate,[38] the Court

---

[35] R. Doc. No. 31, at 1.

[36] *Id.* at 1–2.

[37] *Id.* at 2 (quoting R. Doc. No. 27-2, at 9).

[38] Determining whether the parties "entered a valid arbitration contract turns on state contract law." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016). Pursuant to Louisiana law, contractual obligations can be amended or discharged by a superseding agreement. *See* LA. CIV. CODE art. 1879–81; *see also Alford v. CB Construction & Development, LLC*, 2018 WL 2716394 (La. App. 4 Cir., 2018) (evaluating whether a subsequent agreement between the parties modified the original agreement's arbitration clause). Such a determination is properly reserved for the Court, notwithstanding a valid delegation clause. *Cf. Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024) ("In cases where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration. But, where, as here, parties have agreed to two contracts . . . a court must decide which contract governs."). To be clear, the Court must review the amendments solely to resolve whether the parties' arbitration agreement was modified, voided, or superseded, such that the arbitration agreement no longer exists between the parties. As discussed *infra* n.55, because review of the amendments reveal that they do not purport to modify the arbitration agreement and, in fact, purport to leave all remaining provisions of the loan agreement intact,

requested that OneMain produce the amendments to the loan agreement. On May 18, 2026, in response to this Court's request, OneMain filed into the record two letters.[39]

The first is a letter dated March 20, 2020, which is addressed to plaintiff and Nicole and references the loan account number.[40] The letter informs plaintiff and Nicole that their "request for a permanent loan modification" has been approved and states that such loan modification would be "activate[d]" upon "receipt of the required trial period payment(s)."[41] The March 20th letter goes on to list the terms of the loan modification, which included the modified, lower monthly payment amount of $101.85.[42] Arbitration was not included in this list, nor was it mentioned elsewhere in the May 20th letter.[43] Notably, the letter states: "Except as specifically provided herein, your loan documents will remain unchanged and you and OneMain will be bound by and comply with the terms and provisions thereof."[44]

---

the Court need not reach the question of whether the amendments made by Nicole properly amended the terms of the loan agreement they purport to amend. *See* R. Doc. Nos. 35-1, 35-2. This is not a situation where OneMain is trying to enforce an arbitration agreement contained within an amendment that plaintiff did not sign. *Cf. Staneff v. Onsite Health Diagnostics, LLC*, No. 25-353-B, 2025 WL 3013757, at *4 (N.D. Tex. Oct. 28, 2025) (compelling arbitration of the plaintiff's claims and holding that the plaintiff had consented to the amendment containing the arbitration agreement, absent his signature thereto, because he had agreed to the original agreement's amendment protocol). The arbitration agreement OneMain's motion relies on is contained within the *original* loan agreement. *See* R. Doc. No. 27-2, at 12.

[39] *See* R. Doc. No. 35.

[40] *See* R. Doc. No. 35-1; *see also* R. Doc. No. 27-2 (listing the account number's last four digits as "6863").

[41] R. Doc. No. 35-1, at 1.

[42] *See id.*

[43] *See generally id.*

[44] *Id.* at 2.

The second letter is dated April 28, 2020, and is likewise addressed to plaintiff and Nicole and references the loan account number.[45] This letter states that OneMain had received the necessary trial period payments and that the loan had been "adjusted as set forth" in the April 28th letter.[46] The letter goes on to list the terms, which largely mirror those from the March 20th letter.[47] As with the March 20 letter, the April 28th letter does not mention arbitration.[48] Again, the letter concludes with: "Except as specifically provided herein, your loan documents will remain unchanged; and you and OneMain will be bound by, and comply with all of the terms and provisions thereof, as amended by this agreement."[49]

## II.   STANDARDS OF LAW

### a.   Arbitration

Section 2 of the Federal Arbitration Act ("FAA")[50] provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable,

---

[45] R. Doc. No. 35-2, at 1.

[46] *Id.*

[47] *See id.*

[48] *See generally id.*

[49] *Id.* at 2.

[50] The parties do not dispute that the FAA is applicable to the loan agreement at issue in this case. *Cf. Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 58 (2003) ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause."); *Voyager Life Ins. Co. v. Caldwell*, 353 F. Supp. 2d 748, 752 (S.D. Miss. 2005) ("[I]t seems fairly plain that the entire purpose of Congress when enacting the FAA was to enforce arbitration agreements such as the [consumer loan agreement] in this case, which do substantially affect interstate commerce in the aggregate."). Furthermore, the first page of the loan agreement states: "THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT." R. Doc. No. 27-2, at 8.

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter."

9 U.S.C. § 2. The FAA "establishes a liberal federal policy favoring arbitration agreements." *Parrott v. Int'l Bancshares Corp.*, 167 F.4th 728, 734 (5th Cir. 2026). "There is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Id.* at 735. The FAA also "embodies the overarching principle that arbitration is a matter of contract." *Id.* (internal citations and quotations omitted).

In the Fifth Circuit, "[e]nforcement of an arbitration agreement involves two analytical steps." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "The first, and perhaps most obvious, question for the court is whether there is a contract between the parties at all." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) (cleaned up) (citing *Kubala*, 830 F.3d at 201–02). "Whether the parties entered into a valid contract turns on state contract law." *Parrott*, 167 F.4th at 735.

In this first step the court must "distinguish between 'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges." *Arnold*, 890 F.3d at 550. The latter challenges are always matters for the court, whereas the former may be delegated to the arbitrator by the parties. *Id.* The second step, absent any delegation provision, "involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala*, 830 F.3d at 201. "When determining the scope of an arbitration clause, courts typically indulge every reasonable presumption in favor of arbitration, and resolve all doubts as to the

10

arbitrability of an issue in favor of arbitration." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 537 (5th Cir. 2019) (citation modified).

Pursuant to the FAA, "parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself." *Arnold*, 890 F.3d at 551 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010)). "However, courts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so." *Id.* at 551–52. The party contending that an arbitrator has authority to decide arbitrability bears the burden of demonstrating clearly and unmistakably that the parties agreed to have the arbitrator decide that threshold question." *Houston Refining, L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 408 (5th Cir. 2014) (internal quotations omitted)); *see also Halliburton*, 921 F.3d at 537 ("[The] presumption [in favor of arbitration] does not govern when the parties dispute who determines arbitrability. In that situation, courts reverse the presumption . . . the presumption favors adjudication of arbitrability by the courts absent clear and unmistakable evidence of the parties' intent to submit that matter to arbitration." (internal quotations omitted)).

"If the party seeking arbitration points to a purported delegation clause, the court's analysis is limited." *Kubala*, 830 F.3d at 202 (cleaned up). The court "performs the first step," and if it finds that there is a valid agreement, the "only question" remaining "is whether the purported delegation clause is in fact a delegation clause."

11

*Kubula* at 202. "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.*

Because agreements to delegate threshold issues are themselves matters of contract, the Court must also address challenges made specifically to the delegation clause. *Noble Cap. Grp., L.L.C. v. US Cap. Partners, Inc.*, No. 20-50721, 2021 WL 3477481, at \*2 (5th Cir. Aug. 6, 2021) ("Because we conclude that there is a delegation clause, we next ask whether there is a 'challenge to the delegation clause itself.'" (quoting *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018)); *see also Rent-A-Center*, 561 U.S. at 70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce . . . ."). Absent challenges to the delegation provision specifically, the court will treat the delegation "as valid, leaving any challenge to the validity of the agreement as a whole for the arbitrator." *Arnold*, 890 F.3d at 550 (cleaned up).

### b.    *Louisiana Contract Law*

In Louisiana, "contracts have the effect of law for the parties." *Lobell v. Rosenberg*, 186 So. 3d 83, 88 (La. 2015) (quoting *Clovelly Oil Co., LLC v. Midstates Petroleum Co.*, 112 So. 3d 187, 192 (La. 2013)) (alteration omitted). "It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Aguillard v. Auction Mgmt. Corp.*, 908 So. 2d 1, 22 (La. 2005). Signing a contract holds a signatory to its obligations "save in certain exceptional cases," such as contracts of adhesion or

signatures obtained through fraud. *Tweedel v. Brasseaux*, 433 So. 2d 133, 138 (La. 1983) (quoting *Ray v. McLain*, 31 So. 315, 319 (La. 1901)).

"When a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties." *Lobell*, 186 So. 3d at 89 (citing *Prejean v. Guillory*, 38 So. 3d 274, 279 (La. 2010)); *see also* LA. CIV. CODE art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made[.]"). "However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences." *Lobell*, 186 So. 3d at 89 (citations omitted).

### III.    ANALYSIS

#### a.    *Arbitration*

Plaintiff does not dispute that the parties agreed to arbitrate "some set of claims," pursuant to the loan agreement.[51] *Kubala*, 830 F.3d at 202; *Doe v. Tonti Mgmt. Co.*, No. 20-2466, 2021 WL 5508874, at *10 (E.D. La. Mar. 1, 2021) (Africk, J.) ("[The Court's] only job is to evaluate 'whether the parties entered into *any arbitration agreement at all.*'" (emphasis in original) (citing *id.*)). Indeed, plaintiff concedes that he "did in fact sign" the loan agreement.[52] *See Aguillard*, 908 So. 2d at

---

[51] *See* R. Doc. Nos. 27, 30.
[52] R. Doc. No. 30, at 1.

22. And he does not raise any challenges to the formation or existence of the loan agreement or the arbitration agreement.[53]

While certain terms of the loan agreement were amended,[54] no amendments were made to the parties' agreement to arbitrate.[55] In Louisiana, "[n]ovation is the extinguishment of an existing obligation by the substitution of a new one." LA. CIV. CODE art. 1879. "Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation" or "when the parties expressly declare their intention to novate an obligation." LA. CIV. CODE art. 1881. "Novation may not be presumed," LA. CIV. CODE art. 1880, and nothing within the modification letters indicates that the agreement to arbitrate was extinguished or superseded by the loan amendment.[56]

---

[53] *See generally id.*

[54] *See* R. Doc. No. 35.

[55] As previewed, *supra* n.38, the Court need not decide whether the modifications made by Nicole, allegedly without plaintiff's knowledge or consent, were proper. Whether they were or not has no bearing on the agreement to arbitrate that OneMain is seeking to enforce, which is contained in the loan agreement. Put simply, if the amendment *is not* proper, the amended terms do not apply, and the arbitration agreement remains intact. And if the amendment *is* proper and the modified terms control, nothing in the amendment negates or supersedes plaintiff's obligation to arbitrate, meaning the arbitration agreement remains intact. The Court notes, however, without deciding, that it appears OneMain is correct that plaintiff agreed to allow Nicole to "change the repayment terms" of the loan "without notice" to him and "without releasing [him] from his responsibilities." *See* R. Doc. No. 27-2, at 9.

[56] Plaintiff and Nicole's divorce decree is not relevant to this analysis. First, it is silent with respect to the alleged determination that Nicole was solely "responsible" after their divorce "for paying the indebtedness on the loan." *See* R. Doc. No. 1 ¶ 11. Further, plaintiff and Nicole cannot modify, without the consent of OneMain, plaintiff's obligations pursuant to the original loan agreement to OneMain. *Cf. Burgh Invs., Inc. v. Burk*, No. 24-2339, 2025 WL 2061704, at *3 (E.D. La. July 23, 2025) (Africk, J.) (holding that an ex-married couple's consent judgment and community

14

To be sure, the modification letters explicitly state that the loan agreement would "remain unchanged" except as "specifically provided" therein and that plaintiff "will be bound by and comply with" the other "terms and provisions thereof."[57] *Cf. Alford*, 2018 WL 2716394, at \*4 (looking to the "wording of the agreements" to determine whether the earlier agreement, which contained the arbitration provision, was superseded by the later agreement). Accordingly, the Court finds that an agreement to arbitrate exists between the parties and proceeds to the second step.

Because OneMain asserts that the arbitration agreement contains a valid delegation clause, and plaintiff has made no challenges to the delegation clause specifically, the Court proceeds only with a "strictly limited" determination of whether the delegation clause is valid. *Kubala*, 830 F.3d at 203. The Court finds that it is.

Pursuant to the loan agreement, the parties have agreed to arbitrate "*all* claims and disputes between" them, which "includes, but is not limited to all claims and disputes arising out of, in connection with, or relating to: . . . *whether the claim or dispute must be arbitrated*; the validity and enforceability of this Arbitration Agreement and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of this Arbitration Agreement and the [loan] Agreement."[58] This language is similar to delegation clauses that other courts have

---

property agreement did "not release either of them of their obligation to" the entity from which they obtained the loan).

[57] R. Doc. No. 35-1, at 2; R. Doc. No. 35-2, at 2.

[58] R. Doc. No. 27-2, at 12 (emphasis added).

found valid.[59] And the fact that the agreement excludes certain actions brought by OneMain, small claims lawsuits, and class arbitration does not undermine the parties' clear and unmistakable intent to delegate questions of arbitrability. *Cf. Arnold*, 890 F.3d at 553 ("The mere fact that an arbitration provision does not apply to every possible claim does not render the parties' intent to delegate threshold questions about that provision less clear.").

Moreover, the parties agreed in the loan agreement that any arbitration would "be conducted under the rules and procedures of the American Arbitration Association ('AAA') in effect at the time the arbitration is started."[60] The Fifth Circuit has held that such an express agreement to incorporate the rules from specific arbitration services is sufficiently clear and unmistakable evidence of the parties' agreement to delegate threshold issues of arbitrability. *See Arnold*, 890 F.3d at 553 ("Because the [agreement] expressly incorporate[s] the AAA rules, the parties have

---

[59] *Kubala*, 830 F.3d at 202 (describing a delegation clause as valid "if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated"); *Se. Hosp. Partners, LLC v. Indep. Specialty Ins. Co.*, 724 F. Supp. 3d 578, 584–85 (E.D. La. 2024) (Lamelle, J.) (finding valid: "All matters in dispute between you and us . . . shall be referred to an Arbitration Tribunal . . . "); *Beachcorner Props., LLC v. Indep. Specialty Ins. Co.*, No. 23-1287, 2023 WL 7280516, at *4 (E.D. La. Nov. 3, 2023) (Ashe, J.) (finding valid: "All matters in dispute between you and us . . . in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below."); *McCullough v. MHMR of Tarrant Cnty.*, No. 25-901, 2026 WL 856672, at *5 (N.D. Tex. Mar. 5, 2026), report and recommendation adopted, No. 25-901, 2026 WL 855843 (N.D. Tex. Mar. 27, 2026) (finding valid: "It is the parties' intent that all disputes of any legally cognizable claim. . . between them must be arbitrated . . . includ[ing] . . . any dispute about the interpretation, scope, validity or enforcement of this Agreement or the extent of the arbitrability of any claim.").
[60] *Id.*; *see also* AAA Consumer Arbitration Rules and Mediation Procedures, p. 11.

16

clearly and unmistakably demonstrated their intent to delegate."); *Petrofac, Inc. v. Dyn-McDermott Petroleum Operations Co.*, 687 F.3d 671, 674–75 (5th Cir. 2012).

Plaintiff's argument is that his present claims fall outside of the claims he agreed to arbitrate pursuant to the loan agreement. This captures no more than his disagreement as to "whether [his claims] must be arbitrated," an issue which he has agreed to delegate.[61] *Cf. Arnold*, 890 F.3d at 554 (holding that a plaintiff was "challenging only the scope of the arbitration provision" when she conceded that the agreement at issue "contain[ed] an arbitration clause that cover[ed] some set of claims" (internal quotations omitted)); *Noble Cap. Grp.*, 2021 WL 3477481, at *2 (affirming the district court's decision to compel the plaintiff to arbitrate her claims because the "agreements delegate to the arbitrator the exact challenges that [she] brings in this case").

Plaintiff does not challenge the delegation clause; indeed, nowhere in his response to OneMain's motion does plaintiff even mention the delegation clause or grapple with the Fifth Circuit authority directing courts to refer arbitrability disputes to the arbitrator when a valid delegation clause so directs. *Noble Cap. Grp.*, 2021 WL 3477481, at *2 (holding that the district court correctly concluded that the plaintiff had failed to challenge the delegation clause specifically and noting that "[n]owhere in their opposition to [the] [d]efendants' motion to compel arbitration did [the plaintiffs] even mention the delegation provision"); *Edwards*, 888 F.3d at 744 ("[A]bsent a challenge to the delegation clause itself, we will consider that clause to

---

[61] R. Doc. No. 27-1, at 12.

17

be valid and compel arbitration."); *Hill v. Jackson Offshore Holdings, L.L.C.*, No. 24-30554, 2026 WL 1223613, at *8 (5th Cir. May 5, 2026) (finding that the plaintiff's arguments regarding validity or enforceability of the arbitration agreement should be referred to an arbitrator where the plaintiff did not challenge the delegation clause specifically). "The party opposing arbitration must challenge the delegation provision specifically, and its failure to do so requires the court to enforce the delegation provision as written." *Wealth Assistants LLC v. Thread Bank*, No. 24-40, 2024 WL 2980812, at *7 (S.D. Tex. June 13, 2024) (internal alterations and quotations omitted) (citing *Rent-A-Center*, 561 U.S. at 72)).

Because plaintiff's arguments do not "attack the existence of a contract between the parties, the existence of an agreement to arbitrate between the parties, or the validity of the delegation clause," *Wealth Assistants LLC*, 2024 WL 2980812, at *7 , the Court honors the agreement to delegate and compels plaintiff's arguments to arbitration, *Arnold*, 890 F.3d at 554. This would still be the case even if the claims' arbitrability were to appear to be "wholly groundless," as plaintiff seems to suggest they are.[62] *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."); *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 n.3–4 (5th Cir. 2019)

---

[62] The Court notes that this is not a case in which OneMain is seeking to compel arbitration against plaintiff for claims wholly unrelated to the loan agreement.

18

(recognizing abrogation of the "wholly groundless" exception with respect to arbitrability when there is a valid delegation clause (citing *id.*)).

### b.    Stay

Pursuant to § 3 of the FAA, when an issue subject to an arbitration clause is raised in a federal court, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." OneMain asserts that this matter should be stayed pursuant to § 3 pending completion of arbitration.[63] Plaintiff's only argument against a stay is that there is not an enforceable arbitration agreement between the parties,[64] which the Court has already rejected. Because the Court has determined that arbitration is mandated in this case, it grants the stay with respect to OneMain.

"In general, Section 3 only applies to parties to an agreement containing an arbitration clause." *Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016). The Fifth Circuit has extended § 3 to non-signatories "only where: (1) the arbitrated and litigated disputes involve the same operative facts; (2) the claims asserted in the arbitration and litigation are 'inherently inseparable'; and (3) the litigation has a 'critical impact' on the arbitration." *Crescent City Surgical Operating Co. v. Interstate Fire & Cas. Co.*, No. 25-30044, 2026 WL 1091579, at *5 (5th Cir. Apr. 22, 2026) (quoting *id.*)).

---

[63] R. Doc. No. 27-1, at 14.
[64] *See* R. Doc. No. 30, at 3.

19

The Court finds that the *Rainier* factors weigh in favor of staying litigation against the remaining, non-signatory defendants: TransUnion, Equifax and Experian. The facts underlying plaintiff's claims against OneMain and the non-arbitrating defendants are the same, as they all pertain to the allegedly "erroneous" information regarding the default that was provided and reported on plaintiff's credit report and how defendants allegedly "failed" to correct this reporting error even after plaintiff notified them of the same.[65] Plaintiff's claimed damages arise from this allegedly inaccurate reporting, which plaintiff contends all defendants have played a part in causing.[66] A common question among all plaintiff's claims against defendants will be the scope of each defendant's role and responsibility, pursuant to the FCRA, in investigating and correcting potential errors on individuals' credit reports.[67] For these reasons, the Court finds the claims asserted in arbitration and litigation are inherently inseparable. *Cf. Crescent City*, 2026 WL 1091579, at *5. Finally, "it is difficult to conceive how the litigation could not have a critical impact on the arbitration, given that both proceedings involve the same . . . questions and the same facts." *Id.*

Finally, the Court recognizes that non-arbitrating defendants TransUnion, Equifax, and Experian do not oppose stay of the above-captioned matter pending arbitration.

---

[65] *See* R. Doc. No. 1 ¶¶ 9–15.

[66] *Id.* ¶¶ 16–20.

[67] *See id.* ¶¶ 22, 26, 30, 34 (alleging claims against each defendant for alleged violations of the FCRA with respect to inaccurate information on his credit report).

20

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the motion to compel arbitration is **GRANTED**.

**IT IS FURTHER ORDERED** that the above-captioned matter is **STAYED AND ADMINISTRATIVELY CLOSED**, to be reopened, if necessary, upon the filing of a written motion within thirty (30) days of the final arbitration judgment.

New Orleans, Louisiana, May 21, 2026.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**